1

2

3

4

5

6            **UNITED STATES DISTRICT COURT**

7            **SOUTHERN DISTRICT OF CALIFORNIA**

8    GORDON E. DUNFEE, an individual          CASE NO. 12-cv-1925 BEN (DHB)
     and as Trustee for the GORDON AND
9    MAUREEN DUNFEE 2003 TRUST,               **ORDER:**
     DATED 11/05/04; and MAUREEN L.
10   DUNFEE, an individual, and as            **(1) GRANTING IN PART THE**
     Trustee for the GORDON AND               **MOTION TO DISMISS FILED BY**
11   MAUREEN DUNFEE 2003 TRUST,               **DEFENDANT WELLS FARGO**
     Dated 11/05/04,                          **BANK, N.A.;**
12
                             Plaintiffs,      **(2) GRANTING IN PART THE**
13        vs.                                 **MOTION FOR JUDGMENT ON**
                                              **THE PLEADINGS FILED  BY**
14                                            **DEFENDANTS TRUMAN**
                                              **CAPITAL ADVISORS, LP;**
15                                            **TRUCAP GRANTOR TRUST 2010-**
                                              **2; AND MARIX SERVICING, LLC**
16   TRUMAN CAPITAL ADVISORS,
     LP, a Delaware Limited Partnership;      **[Dkt. Nos. 4, 5]**
17   TRUCAP GRANTOR TRUST 2010-2,
     an unknown business entity; MARIX
18   SERVICING LLC; ASSURED
     LENDER SERVICES, INC.; WELLS
19   FARGO HOME MORTGAGE; and
     WELLS FARGO BANK, N.A.,
20
                             Defendants.
21
          Two motions are before the Court.  Defendant Wells Fargo Bank, N.A.,
22
     individually and as Wells Fargo Home Mortgage ("Wells Fargo") moves to dismiss
23
     Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to
24
     Federal Rule of Civil Procedure 12(b)(6).  Defendants Truman Capital Advisors, LP;
25
     TruCap Grantor Trust 2010-2; and Marix Servicing, LLC move for judgment on the
26
     pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons stated
27
     below, Defendants' motions are granted in part.
28
                              **I.  BACKGROUND**

1    This is an action involving real estate lending and debt collection practices.

2  Plaintiffs are Gordon E. Dunfee and Maureen L. Dunfee, individually and as trustees

3  for the Gordon and Maureen Dunfee 2003 Trust, Dated 11/05/04.  Defendants are

4  Wells Fargo Bank, N.A and Wells Fargo Home Mortgage[1] (Plaintiffs' original

5  lender); Truman Capital Advisors, LP (purchaser of Plaintiffs' loan); Marix

6  Servicing, LLC (Truman's loan servicer); TruCap Grantor Trust 2010-2 (identified

7  only as an "aka" for Truman); and Assured Lender Servicers, Inc. (a foreclosure

8  trustee).

9    Plaintiffs filed this action in state court in September 2011 against Truman,

10  TruCap, Marix, and Assured.  Plaintiffs amended the complaint in March 2012, and

11  then added as defendants Wells Fargo Bank, N.A and Wells Fargo Home Mortgage.

12  Plaintiffs filed a Second Amended Complaint on July 19, 2012.  The Second

13  Amended Complaint asserts nine causes of action: (1) Unfair Debt Collection

14  Practices; (2) Violation of Fair Credit Reporting Act; (3) Fraudulent

15  Misrepresentation; (4) Breach of Fiduciary Duty; (5) Unjust Enrichment; (6) Civil

16  Conspiracy; (7) Civil RICO; (8) Violation of Business & Professions Code Section

17  17200; and (9) Declaratory Relief.

18    According to the Plaintiffs' Second Amended Complaint, in April 2007,

19  Plaintiffs took out an $856,000 home loan from Wells Fargo.  Wells Fargo handled

20  all of Plaintiffs' banking needs, and even assigned them a private banker to advise

21  them on financial matters.  By December 2008, Plaintiffs financial condition had

22  deteriorated, and they approached Wells Fargo about modifying the loan.  Wells

23  Fargo led them to believe a modification was possible.  For nearly two years, Wells

24  Fargo regularly requested financial statements, hardship letters, and other

25  information from Plaintiffs.  Relying on Wells Fargo's statements that it would

26  agree to a modification, Plaintiffs continued to make timely payments on their loan

27

28    [1] Wells Fargo asserts that Wells Fargo Home Mortgage is a division of (and not a separate entity from) Wells Fargo Bank, N.A.

1   until February 2010.   At that point, Wells Fargo informed them that a modification

2   was not possible as long as their loan was "current," so Plaintiffs stopped making

3   payments for a time, then resumed partial payments.

4        Wells Fargo eventually sold Plaintiffs' loan to Truman in October 2010.   At

5   the time of sale, Plaintiffs' loan "was in a defaulted status."   Marix, Truman's loan

6   servicer, sent Plaintiffs a notice of default on October 28, 2010.   Plaintiffs continued

7   making partial payments, and Marix accepted most of them.   Marix also continued

8   loan modification discussions with Plaintiffs, demanding "reams" of Plaintiffs'

9   personal and financial records, while knowing that Truman would not accept a

10  modificiation.   Marix used the information "to abuse, tease, antagonize, berate, insult,

11  and humiliate" Plaintiffs.   Truman and Marix made numerous collection calls "that

12  intimidated, [and] harassed Plaintiffs."   Marix sent letters to Plaintiffs "containing

13  false factual information" that threatened Plaintiffs with loan acceleration and

14  foreclosure.

15       Assured sent notices of default to Plaintiffs on February 15, 2011 and March

16  24, 2011, followed by a notice of trustee's sale, dated August 30, 2011.   Plaintiffs

17  allege that they asked "Defendants" for an accounting, but "the explanations, details

18  and itemizations were all incorrect."

19       Plaintiffs filed suit.   Wells Fargo removed the case to this court.   It then

20  moved to dismiss the Second Amended Complaint for failure to state a claim.[2]

21  Truman, TruCap, and Marix moved for judgment on the pleadings.   Because TruCap

22  is described in the Second Amended Complaint only as an "aka" for Truman, the

23

24

25       [2] In conjunction with its motion, Well Fargo asks the Court to take judicial notice
    of four documents: (1) a deed of trust, recorded on April 5, 2007; (2) a notice of default,
26  recorded on March 29, 2011; (3) a notice of trustee's sale, recorded on August 30,
    2011; and (4) a trustee's deed upon sale, recorded September 23, 2011. Dkt. Nos. 4-2,
27  Exs. A-D.   A court "may take judicial notice of 'matters of public record' without
    converting a motion to dismiss into a motion for summary judgment." *Lee v. Cnty. of
28  Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).   Plaintiffs have not questioned the
    authenticity of these documents.   Accordingly, Wells Fargo's request is granted. *See*
    FED R. EVID. 201(c).

1  Court will treat them as a single entity for the purposes of this Order.[3]

## II.  LEGAL STANDARDS

### A.    Rule 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  As a general rule, a complaint must set out "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, claims that sound in fraud or mistake must also meet the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b). *Vess v. Ciba-Geiby Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

In evaluating a pleading under Rule 12(b)(6), the Court accepts all material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *N. Star Int'l v. Az. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. Cal. DOC*, 151 F.3d 1192, 1196 (9th Cir. 1998).

### B.    Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citations omitted).  Judgment on the pleadings is properly granted "'when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005) (citation omitted).

---

[3]  Truman and TruCap assert that they are distinct entities, and that TruCap was actually the successor lender.

1    Plaintiffs also ask for additional time and opportunity for discovery under

2  Federal Rules of Civil Procedure 56(d) (in briefing mistakenly referred to as Rule

3  56(f)).  However, Rule 56(d) is inapplicable to motions brought under Rule 12(b) or

4  (c).  Since both motions in this action are brought under Rule 12(b) and (c),

5  Plaintiffs request for a continuance for discovery is denied.

6                              **III.  DISCUSSION**

7         **A.    Jurisdiction**

8         As a threshold matter, the Court must address whether it has jurisdiction to

9  hear this case.  Plaintiffs raise an "Opposition to Motion to Remand."  Presumably,

10  Plaintiffs mean to oppose the *removal* of this action from state court.  Because

11  federal courts have an independent duty to ensure that they have jurisdiction over a

12  case, the court will briefly address this issue.

13         Under the general removal statute, a civil action filed in state court may be

14  removed to a federal district court if that court has original jurisdiction based on

15  either "diversity of citizenship" or a "federal question."  *See* 28 U.S.C. § 1441(a);

16  *see also* 28 U.S.C. §§ 1331, 1332.  As three of Plaintiffs' claims for relief assert

17  violations of federal law, federal question jurisdiction exists here.  At this point in

18  the proceedings, the Court need not address whether diversity exists.

19         **B.    Unfair Debt Collection Practices (First Claim for Relief)**

20         In their first claim for relief, Plaintiffs allege violations of both the federal

21  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against all

22  Defendants, and violations of California's Fair Debt Collection Practices Act

23  ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*, against Truman and Marix.

24  Specifically, Plaintiffs allege that each Defendant is a "debt collector" under the

25  statutes and that they: (1) used unfair or unconscionable means to collect a debt; and

26  (2) threatened action not intended by sending letters "threatening foreclosure while

27  orally promising Plaintiffs otherwise."  In addition, Plaintiffs allege that Truman and

28  Marix made collection calls that "intimidated, [and] harassed Plaintiffs."

1          *1.      Federal Fair Debt Collection Practices Act*

2          The FDCPA imposes civil liability on "debt collectors" for certain unlawful

3   debt collection practices. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,

4   130 S. Ct. 1605, 1608 (2010).  To state a claim, a plaintiff must allege that: (1)

5   Defendant was collecting debt as a "debt collector"; and (2) its debt collections

6   actions violated a federal statute. *Oliver v. Ocwen Loan Servs., LLC*, No. C12-5374

7   BHS, 2013 U.S. Dist. LEXIS 7884, at *6-7 (W.D. Wash. Jan. 18, 2013) (citing

8   *Jerman*, 130 S. Ct. at 1606).  The FDCPA distinguishes between debt collectors and

9   "creditors." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.

10  2003).  Creditors are not subject to liability.

11         A debt collector is "any person who uses any instrumentality of interstate

12  commerce or the mails in any business the principal purpose of which is the

13  collection of any debts, or who regularly collects or attempts to collect, directly or

14  indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.

15  § 1692a(6).  The definition excludes "any person collecting or attempting to collect

16  any debt owed or due or asserted to be owed or due another to the extent such

17  activity . . . (iii) concerns a debt which was not in default at the time it was obtained

18  by such person."  15 U.S.C. § 1692a(6)(F).  A creditor is "any person who offers or

19  extends credit creating a debt or to whom a debt is owed, but such term does not

20  include any person to the extent that he receives an assignment or transfer of a debt

21  in default solely for the purpose of facilitating collection of such debt for another."

22  15 U.S.C. § 1692a(4) (emphasis added).   "In other words, the Act treats assignees as

23  debt collectors if the debt sought to be collected was in default when acquired by the

24  assignee, and as creditors if it was not." *Schlosser*, 323 F.3d at 536.  "[T]he

25  purchaser of a debt in default is a debt collector for purposes of the FDCPA even

26  though it owns the debt and is collecting for itself." *McKinney v. Cadleway Props.,*

27  *Inc.*, 548 F.3d 496, 501 (7th Cir. 2008); *see also FTC v. Check Investors, Inc.*, 502

28  F.3d 159, 171-74 (3d Cir. 2007).

1       Wells Fargo contends that it is not a "debt collector" with respect to Plaintiffs'

2   loan.  The Court agrees.  A party that originates a debt is not a debt collector for that

3   debt.  *De Dios v. Int'l Realty & Invest.*, 641 F.3d 1071, 1074 (9th Cir. 2011); *Vieira*

4   *v. Prospect Mortg., LLC*, Case No. SACV 11-1780 AG (JPRX), 2012 WL 3356947,

5   at *5 (C.D. Cal. July 9, 2012) ("Originators of loans secured by real property and

6   their assignees—like U.S. Bank in this case—are not debt collectors, and therefore

7   are not subject to the FDCPA."); *Mansour v. Cal-Western Reconveyance Corp.*, 618

8   F. Supp. 2d 1178, 1182 (D. Ariz. 2009) (mortgagees and their beneficiaries,

9   including mortgage servicing companies, are not debt collectors subject to the

10  FDCPA).  The Second Amended Complaint clearly states that Wells Fargo was

11  Plaintiffs' original lender.  Since Plaintiffs' claim against Wells Fargo describes

12  Wells Fargo as an originator of the loan, and Wells Fargo would not be subject to

13  liability as a "debt collector" as a matter of law, the motion to dismiss is granted.

14      Truman seeks judgment on the pleadings arguing that it too falls outside the

15  FDCPA's definition of "debt collector."  It compares itself to a mortgage lender or

16  bank acting to collect a debt owed itself.  The Court is not persuaded.  Plaintiffs

17  allege that their loan "was in a defaulted status" when Truman acquired it "solely for

18  the purpose of facilitating collection of a delinquent debt."  At this juncture, the

19  Court accepts that allegation as true.  Unlike Wells Fargo, Truman has not

20  conclusively shown that it falls outside the FDCPA's definition of debt collector.

21      Neither has Marix.  Marix contends that it is excluded from the definition of

22  debt collector under 15 U.S.C. § 1692a(6)(B).  This argument is not well taken.

23  "Under 15 U.S.C. § 1692a(6)(B), the term 'debt collector' does not include those

24  collecting debts for corporate affiliates 'if the person acting as a debt collector does

25  so only for persons to whom it is so related or affiliated and if the principal business

26  of such person is not the collection of debts.'"  *Fox v. Citicorp Credit Servs.*, 15 F.3d

27  1507, 1514 (9th Cir. 1994).  Whether Marix is entitled to the § 1692a(6)(B)

28  exclusion requires factual determinations that are not appropriate at this stage of the

1  litigation.

2        Truman and Marix argue in the alternative that Plaintiffs' FDCPA claim is

3  defective because the act of foreclosing upon a property is not the collection of debt.

4  It is true that "the vast majority of district courts within the Ninth Circuit to have

5  considered the issue have concluded that the FDCPA does not apply to action taken

6  by lenders or their agents when foreclosing on the lender's security interest under a

7  deed of trust, in a non-judicial foreclosure of property." *Cromwell v. Deutsche Bank*

8  *Nat'l Trust Co.*, Case No. C 11–2693 PJH, 2012 WL 244928, at *2 (N.D. Cal. Jan.

9  25, 2012) (collecting cases).  In contrast, here, the behavior complained about

10  appears to extend beyond foreclosure.  Plaintiffs allege "numerous daily collection

11  calls" by Truman and Marix that intimidated and harassed them, conduct that could

12  constitute debt collection.  *See Salvato v. Ocwen Loan Servicing*, Case No. 12-cv-

13  0088 JLS (POR), 2012 WL 3018051, at *7 (S.D. Cal. July 24, 2012) ("[D]emands of

14  payment and threats prior to or separate from foreclosure may be debt collection").

15  Consequently, Truman and Marix are not entitled to judgment on the pleadings on

16  this claim for relief.

17          ***2.  California's Rosenthal Fair Debt Collection Practices Act***

18        In their motion, neither Truman nor Marix addresses Plaintiffs' assertion that

19  they are also "subject to California debt collection liability."  Nevertheless, insofar

20  as Plaintiffs' claim for unfair debt collection is based on the Rosenthal Act

21  ("RFDCPA"), it is deficient as a matter of law.  "Based on the language of the

22  statute, courts have declined to regard a residential mortgage loan as a 'debt' under

23  the RFDCPA." *Darrin v. Bank of Am., N.A.*, No. 12-cv-00228-MCE-KJN, 2013

24  U.S. Dist. LEXIS 31941, at *15 (E.D. Cal. Mar. 13, 2013); *Sipe v. Countrywide*

25  *Bank*, Case No. CV-F-09-798 OWW/DLB, 2010 U.S. Dist. LEXIS 70320, at *46-47

26  (E.D. Cal. July 13, 2010) ("If a residential mortgage loan is not a debt under the

27  RFDCPA for purposes of foreclosure, it makes no sense to categorize it as a

28  'consumer debt' when a loan serving company allegedly attempts to collect the debt

1   by means other than foreclosure."); *Ricon v. Recontrust Co.*, Case No. 09cv937 IEG

2   (JMA), 2009 U.S. Dist. LEXIS 67807 (S.D. Cal. Aug. 4, 2009) (same).

3          Plaintiffs allege Truman and Marix made abusive collection calls in

4   connection with their home loan.  Because a home loan is not a "debt" under the

5   Rosenthal Act, Plaintiffs' claim fails on the pleadings.  The motion for judgment on

6   the pleadings is granted as to the claim against Truman and Marix under the state

7   Rosenthal Act.

8          **C.      Fair Credit Reporting Act  (Second Claim for Relief)**

9          In their second claim, Plaintiffs allege that Defendants violated the Fair Credit

10   Reporting Act,15 U.S.C. § 1681 *et seq*. ("FCRA").  Plaintiffs accuse Defendants of

11   "individually or collectively wrongfully, improperly, and illegally report[ing]

12   negative information as to the Plaintiffs to one or more Credit Reporting Agencies,"

13   resulting in "negative information" on Plaintiffs' credit reports and the lowering of

14   their FICO scores.

15          Defendants assert that the claim is deficient because Plaintiffs fail to plead

16   that they notified each collection agency of any dispute.  This argument is well

17   taken.  The purpose of the FCRA is "to protect consumers against inaccurate and

18   incomplete credit reporting;" however, private enforcement is only permitted for

19   certain duties imposed by the act.  *Nelson v. Chase Manhattan Mortg. Corp.*, 282

20   F.3d 1057, 1059 (9th Cir. 2002).  Plaintiffs invoke § 1681s-2(b),[4] which does permit

21   private lawsuits.  However, the duties imposed by that section arise only *after* the

22   furnisher of information receives notice of dispute from a credit reporting agency.

23   *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).  Thus,

24   when a plaintiff fails to allege that he notified a credit reporting agency of a dispute,

25   the claim is properly dismissed for failure to state a claim.  *See Ohlendorf v. Am.*

26   *Brokers Conduit*, Case No. CIV S-11-293 LKK/EFB, 2012 U.S. Dist. LEXIS 28862,

27

28          [4] Plaintiffs actually claim the right to maintain a private cause of action pursuant to "15 USC sec. 1681(s)(2)(b)," which does not exist.

- 9 -                                                12cv01925

1   at *23-24 (E.D. Cal. Mar. 5, 2012) (dismissing FCRA claim where no allegations of

2   dispute communicated to credit reporting agency or from agency to furnisher of

3   information); *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1180 (E.D. Cal 2005) ("In

4   order for Plaintiffs to state a claim under the FCRA against a furnisher of credit

5   information . . . Plaintiffs must allege that they contacted the CRAs who, in turn,

6   determined the claim was viable and contacted [the furnisher] triggering [the

7   furnisher's] duty to investigate.").

8         Plaintiffs have not alleged that they contacted a credit reporting agency.

9   While a governmental body may bring an action for reporting false information, a

10  private party must do more before a private right of action is created.  *Gorman*, 584

11  F.3d at 1154 & n.9.  Therefore, Plaintiffs' claim under the FCRA is dismissed as to

12  Wells Fargo.  Likewise, judgment on the pleadings is granted to Truman/TruCap,

13  and Marix on this claim.

14        **D.     Fraudulent Misrepresentation (Third Claim for Relief)**

15        In their third claim, Plaintiffs accuse all Defendants of fraud.  To state a claim

16  for relief under California state law, a plaintiff must allege: (1) a misrepresentation;

17  (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5)

18  damages.  *Manown v. Cal-W. Recon. Corp.*, Case No. 09cv1101 JM (JMA), 2009

19  WL 2406335 (S.D. Cal. Aug. 4, 2009) (citing *Ach v. Finkelstein*, 264 Cal. App. 2d

20  667, 674 (1968)).  A plaintiff must also meet the pleading requirements of Federal

21  Rule of Civil Procedure 9(b), which requires a party to "state with particularity the

22  circumstances constituting fraud or mistake."  Put differently, to avoid dismissal

23  under Rule 9(b), the complaint "would need to state the time, place, and specific

24  content of the false representations as well as the identities of the parties to the

25  misrepresentation."  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.

26  2004) (internal quotation marks omitted).  "In the context of a fraud suit involving

27  multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each]

28  defendant[] in the alleged fraudulent scheme."  *Swartz v. KPMG LLG*, 476 F.3d 756,

1  765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531,

2  541 (9th Cir. 1989)).

3       In this case, Plaintiffs allege that Defendants concealed material information,

4  both before and after the closing of the loan.  They allege Defendants made

5  knowingly false statements about amounts due in the foreclosure notices.  Further,

6  they allege that Defendants made deceptive promises about how they would assist in

7  modifying the loan and ward off foreclosure, while instead intending to harass

8  Plaintiffs about loan delinquencies.  Ultimately, it is alleged, Defendants intended all

9  along to take the Plaintiffs' house through foreclosure, deeming it to be a very

10 attractive property.  Plaintiffs allege that Defendants' plan to fraudulently take the

11 property began on December 1, 2008, when Plaintiffs met with Wells Fargo personal

12 banker Jason Davis and described their financial difficulty in making continuing

13 payments on the loan.  In February 2010, the process took a significant turn when a

14 person or persons at Wells Fargo advised Plaintiffs to stop making the agreed loan

15 payments because they could not "qualify" for a loan modification while the

16 payment obligations were current.  According to the Second Amended Complaint,

17 the fraud continued in October 2012, when Truman and Marix continued to engage

18 Plaintiffs in loan modification discussions while secretly knowing that they were not

19 going to modify Plaintiffs' loan.

20      Plaintiffs' allegations have sufficient specificity.  While names of persons

21 who made misrepresentations are mostly lacking, some titles and positions are set

22 forth, as are specific dates, and the specific content of some allegedly false

23 representations.  Since the allegations satisfy the five elements of state law fraud and

24 provide the notice required by Rule 9(b), Wells Fargo's motion to dismiss the

25 fraudulent misrepresentation claim is denied.  Likewise, the motion for judgment on

26 the pleadings by Truman/TruCap and Marix is denied.

27

28      **E.    Breach of Fiduciary Duty (Fourth Claim for Relief)**

12cv01925

1    In their fourth claim for relief, aimed only at Wells Fargo (and not Truman or

2  Marix), Plaintiffs allege that Wells Fargo owed them a fiduciary duty on account of

3  their "very special and extremely close banking relationship . . . that went far beyond

4  the standard arms length lender-borrower relationship."  Plaintiffs further allege that

5  Wells Fargo breached that duty by "engaging in abusive and unlawful collection

6  practices," "misrepresenting monies owed under the Note," and so on.  As part of

7  this cause of action, Plaintiffs demand an accounting of all monies paid to

8  Defendants and all charges levied against Plaintiffs.

9    Wells Fargo moves to dismiss the claim asserting that it owes no fiduciary

10  duty to Plaintiffs as a matter of law, and that Plaintiffs therefore fail to state a claim

11  for relief.  The Court disagrees.  In California, it is true that "absent special

12  circumstances . . .  a loan transaction is at arm's length and there is no fiduciary

13  relationship between the borrower and lender."  *Oaks Mgmt. Corp. v. Superior*

14  *Court*, 145 Cal. App. 4th 453, 466 (2006) (collecting cases).  However, here,

15  Plaintiffs contend there were special circumstances.  Plaintiffs allege that their

16  membership in Wells Fargo's "Private Banking Group" elevated the parties'

17  relationship to fiduciary status because Wells Fargo handled all of Plaintiffs'

18  investments, gave Plaintiffs' business and personal advice, had numerous luncheons

19  with Plaintiffs, made travel plans for them, received confidential personal and

20  financial information about the Plaintiffs and solicited Plaintiffs' trust and

21  confidence in its advice and counsel.

22    Even accepting the allegations as true, which courts must do when evaluating

23  a motion to dismiss, the Court finds that Plaintiffs cannot allege a plausible claim for

24  breach of fiduciary duty.  Although Plaintiffs describe a number of unusual

25  circumstances suggesting a close relationship, Plaintiffs have not cited a case where

26  a California court has extended the tort of bad faith in the banking context to a bank

27  and its depositor or a lender and its borrower.  *See Kim v. Sumitomo Bank*, 17 Cal.

28  App. 4th 974, 979-980 (1993); *Copesky v. Superior Court*, 229 Cal. App. 3d 678,

- 12 -

1  690 (1991) ("Our own court, in an opinion written by the same justice who authored

2  *Commercial Cotton*, in *Mitsui Manufacturers Bank v. Superior Court* stated: We

3  reject real parties' argument that the tort doctrine which has been extended only to

4  situations where there are unique fiduciary-like relationships between the parties,

5  should encompass normal commercial banking transactions.  In an extended and

6  scholarly opinion the court in *Careau & Co. v. Security Pacific Business Credit,*

7  *Inc.*, found no 'special relationship' to exist in the bank-borrower situation.")

8  (internal citations omitted); *Rey v. Countrywide Home Loans, Inc.*, Case No. 11-142

9  JMS/KSC, 2011 WL 2160679, at *11 (D. Haw. June 1, 2011) ("the proposition that

10  the borrower-lender relationship is not fiduciary in nature is well-settled.")

11  (collecting cases).  While California courts may extend tort liability in the future to

12  include circumstances like Plaintiffs', they have not done so at this juncture.

13  Therefore, Wells Fargo's motion to dismiss is granted.

14        **F.     Unjust Enrichment  (Fifth Claim for Relief)**

15        In their fifth claim for relief, Plaintiffs assert a claim for unjust enrichment

16  against all Defendants.  Specifically, Plaintiffs allege that "Defendants had an

17  implied contract with the Plaintiffs to ensure that Plaintiffs understood all amounts

18  due under the Loan which would be paid to the Defendants to obtain credit on

19  Plaintiffs' behalf and to not charge any fees which were not related to the Dunfee

20  Loans and without full disclosure to the Plaintiffs."  As to Wells Fargo, Plaintiffs

21  allege that it accepted periodic payments from Plaintiffs.  However, Defendants did

22  not give credits for partial payments on the loan.  Plaintiffs' property was eventually

23  sold through foreclosure.  Plaintiffs do not allege the value of the house sold.

24  However, if Defendants accepted loan payments and failed to credit the payments as

25  alleged, and if the home was sold for an amount exceeding the true unpaid balance,

26  then Plaintiffs would have an equitable right to this remedy.  Moreover, Plaintiffs

27  also allege that Defendants were not actually holders of the loans and therefore not

28  entitled to any payments.  Plaintiffs assert that Defendants misrepresented the facts

1  intending either to force Plaintiffs to pay sums of money to which Defendants were

2  not entitled, or to intimidate Plaintiffs into abandoning the house to foreclosure.

3    "The doctrine [of unjust enrichment] applies where plaintiffs, while having no

4  enforceable contract, nonetheless have conferred a benefit on defendant which

5  defendant has knowingly accepted under circumstances that make it inequitable for

6  the defendant to retain the benefit without paying for its value." *Hernandez v.*

7  *Lopez*, 180 Cal. App. 4th 932, 938 (2009). "It is not an independent cause of action,

8  but rather is pled as part of a quasi-contract claim in order to avoid unjustly

9  conferring a benefit upon a defendant where there is no valid contract." *Ohlendorf*,

10  2012 U.S. Dist. LEXIS 28862, at *28 (citation and internal quotation marks

11  omitted); *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) ("Under the law of

12  restitution, an individual may be required to make restitution if he is unjustly

13  enriched at the expense of another.  A person is enriched if he receives a benefit at

14  another's expense.  The term 'benefit' 'denotes any form of advantage.'") (citations

15  omitted).

16    Here, Plaintiffs have set forth a plausible claim for relief that Wells Fargo

17  accepted loan payments that it either did not properly credit or that it had no legal

18  right to demand.  Therefore, Wells Fargo's motion to dismiss is denied.  Likewise,

19  accepting the allegations as true, Truman and Marix's motion for judgment on the

20  pleadings must be denied.  It may well be proved later that Defendants accepted and

21  correctly accounted for Plaintiffs' payments and the foreclosure sale value of the

22  house, and that Defendants were owed these amounts or more.  However, at this

23  stage of the proceedings, Truman and Marix's motion for judgment is denied.

24    **G. Civil Conspiracy (Sixth Claim for Relief)**

25    In their sixth claim for relief, it is alleged that all of the Defendants conspired

26  to defraud Plaintiffs of their house by using various means leading up to the

27  foreclosure sale.

28    Civil conspiracy to defraud "is not an independent tort, but rather only serves

12cv01925

1   as a theory of liability for claims of fraud." *Ohlendorf*, 2012 U.S. Dist. LEXIS

2   28862, at *29-30 (internal quotations and citations omitted).  While civil conspiracy

3   law cannot create a duty, it does allow a tort recovery against one who already owes

4   a duty, including the duty "not to engage in affirmative fraud." *Champlaie v. BAC*

5   *Home Loans Servicing*, 706 F. Supp. 2d 1029, 1057 (E.D. Cal. 2009).  As Plaintiffs

6   have previously alleged all Defendants engaged in a plan and actions successfully

7   designed to defraud Plaintiffs of their house, the Second Amended Complaint

8   sufficiently pleads this separate theory of liability against all Defendants.

9        Therefore, Wells Fargo's motion to dismiss this claim is denied and

10  Truman/Marix's motion for judgment on the pleadings on this claim is denied.

11       **H.    Civil RICO (Seventh Claim for Relief)**

12       Plaintiffs allege that Defendants violated the Racketeer Influenced and

13  Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").  Wells Fargo

14  contends that Plaintiffs' RICO claim fails because it does not identify: (1) what

15  section of the RICO statute was violated; (2) what "predicate acts" of racketeering

16  activity gave rise to their RICO claim; (3) what civil injury they suffered that is

17  compensable under RICO; (4) how Wells Fargo caused their injury; or (5) how

18  Wells Fargo was part of a conspiracy with co-defendants.  Truman/Marix raises

19  other pleading deficiencies.

20       Plaintiffs do indeed fail to identify the section(s) of the RICO statute under

21  which they are proceeding.  That alone is reason for dismissal.  *See United Transp.*

22  *Union v. Springfield Terminal Co.*, 869 F. Supp. 42, 48-49 (D. Me. 1994) (citing

23  *Wash. v. Baenziger*, 656 F. Supp. 1176, 1178 (N.D. Cal. 1987)).  But even if the

24  Court overlooks that deficiency, Plaintiffs' failure to sufficiently plead "racketeering

25  activity" warrants dismissal.

26       "'[R]acketeering activity' is any act indictable under several provisions of

27  Title 18 of the United States Code, and includes the predicate acts of mail fraud,

28  wire fraud and obstruction of justice." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th

1  Cir. 2004).  Importantly for this case, "neither fraud, in and of itself, nor the creation
2  of fraudulent loan documents are predicate offenses under RICO."  *Myers v. Encore*
3  *Credit*, Case No. Civ. S-11-1714 KJM/KJN, 2012 U.S. Dist. LEXIS 141873, at \*27
4  (E.D. Cal. Sept. 30, 2012).  When a civil RICO claim is premised on wire or mail
5  fraud, the factual circumstances must also be pled with particularity to comply with
6  Federal Rule of Civil Procedure 9(b).  *Sanford v. MemberWorks*, 625 F.3d 550,
7  557-58 (9th Cir. 2010).

8        Plaintiffs make a blanket allegation that Defendants "perpetrat[ed] a fraud
9  upon the Plaintiff's [sic] through the use of intentional nondisclosure, material
10 misrepresentation, and the creation of fraudulent loan documents."  Further, they
11 allege that "[i]n all of the wrongful acts alleged in this complaint, the Defendants
12 and each of them have utilized the United States mail in furtherance of their pattern
13 of conduct to unlawfully collect on negotiable instruments[.]"

14        Unfortunately, such generalized allegations fail to satisfy Rule 9(b).  *See*
15 *McAnelly v. PNC Mortg.*, Case No. 10-02754 MCE-GGH, 2011 U.S. Dist. LEXIS
16 144596, at \*19 (E.D. Cal. Dec. 15, 2011) (stating that allegations of "intentional
17 nondisclosure, fraud, and creation of fraudulent loan documents" had "not
18 sufficiently tethered the specific conduct falling within RICO to the specific
19 defendants in order to demonstrate a plausible claim").  Plaintiffs seemingly intend
20 to allege mail fraud, but they have not indicated which communications by which
21 defendant scattered throughout 113 paragraphs might constitute the predicate
22 offenses.  *See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011) ("Courts
23 have been particularly sensitive to Fed. R. Civ. Pro. 9(b)'s pleading requirements in
24 RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have
25 further required specific allegations as to which defendant caused what to be mailed
26 (or made which telephone calls), and when and how each mailing (or telephone call)
27 furthered the fraudulent scheme." (quoting *Gotham Print, Inc. v. Amer. Speedy*
28 *Printing Ctrs., Inc.*, 863 F. Supp. 447, 457 (E.D. Mich. 1994)).  Because of those

1  deficiencies, Wells Fargo's motion to dismiss the RICO claim is granted.  Likewise,

2  Truman/Marix's motion for judgment on the pleadings for the RICO claim is

3  granted.

4       **I.**     **Business & Professions Code § 17200 (Eighth Claim for Relief)**

5       In their eighth claim for relief, Plaintiffs assert a claim against all Defendants

6  under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

7  Plaintiffs do not assert any facts specific to this cause of action.  Rather, they

8  incorporate by reference the other allegations in the Second Amended Complaint.

9  As to the unlawful prong, "[t]he UCL incorporates other laws and treats violations of

10  those laws as unlawful business practices independently actionable under state law."

11  *Barocio v. Bank of Amer., N.A.*, Case No. C 11-5636 SBA, 2012 WL 3945535, at *8

12  (N.D. Cal. Sept. 10, 2012) (*citing Chabner v. United Omaha Life Ins. Co.*, 225 F.3d

13  1042, 1048 (9th Cir. 2000)).  "As to the fraudulent prong [of the UCL], fraudulent

14  acts are ones where members of the public are likely to be deceived."  *Sipe*, 2010

15  U.S. Dist. LEXIS 70320, at *49 (*citing Sybersound Records, Inc. v. UAV Corp.*, 517

16  F.3d 1137, 1151-52 (9th Cir. 2008)).  Therefore, this claim rises or falls with the

17  success or failure of other allegations of unlawfulness or fraud.

18       Since Plaintiffs have successfully alleged a number of violations of law as

19  well as fraudulent acts of the type likely to deceive members of the public, Plaintiffs

20  have likewise successfully alleged violations of California's Unfair Competition

21  Law.  *See, e.g., Darrin v. Bank of Amer., N.A.*, Case No. 2:12-cv-228 MCE/KJN,

22  2013 U.S. Dist. LEXIS 31941, at *18 (E.D. Cal. Mar. 7, 2013).  Wells Fargo's

23  motion to dismiss the UCL claim is denied.  Truman/Marix's motion for judgment

24  on the pleadings of the UCL claim is likewise denied.

25       **J.**     **Declaratory Relief  (Ninth Claim for Relief)**

26       Lastly, Plaintiffs assert a claim for declaratory relief against all Defendants,

27  although they agreed during briefing to drop the claim as to Wells Fargo, they

28  continue to press it against Truman/Marix.

12cv01925

1        The gist of the ninth claim is that notices of default and sale that preceded the

2 sale of Plaintiffs' home were defective "due to sloppy accounting practices in

3 computing what amounts are actually due."  Plaintiffs now seek a "judicial

4 determination of their rights and duties with a declaration and ruling that the

5 foreclosure of Plaintiff's [sic] property and the resultant transfer of title to

6 TRUMAN, via a trustee's sale, was unlawful and void and that the title should be

7 returned to Plaintiffs."

8        It is undisputed that the federal Declaratory Judgement Act does not

9 independently create a claim for relief or confer federal subject-matter jurisdiction.

10 It simply provides a remedy.  "Even if an independent cause of action for declaratory

11 relief could be brought in state court, it cannot be brought in federal court." *Morgan*

12 *v. U.S. Bank N.A.*, Case No. C 12-3827 CRB, 2012 WL 6096590, at  *5 (N.D. Cal.

13 Dec. 7, 2012) (citations omitted).

14        In this case, Plaintiffs seek more than a remedy for the existing claims for

15 relief.  They seek relief similar to that afforded in a quiet title action or a claim for

16 wrongful foreclosure. *See, e.g., Ohlendorf*, 2012 U.S. Dist. LEXIS 28862, at *34-

17 37.  However, Plaintiffs have not articulated specific claims for relief of this nature.

18 Therefore, for the purpose of clarifying the pleadings and the existing claims for

19 relief, the Court treats this claim as a remedy only.  Wells Fargo's motion to dismiss

20 the declaratory judgment request as an independent ninth claim for relief is granted.

21 Likewise, Truman/Marix's motion for judgment on the pleadings as to an

22 independent ninth claim for relief is granted.

23                          **IV.  CONCLUSION**

24        For the reasons stated, Wells Fargo's motion to dismiss is granted in part and

25 Truman, Marix and TruCap's motion for judgment on the pleadings is granted in

26 part.

27        The Court dismisses the following claims against the Wells Fargo Defendants

28 without prejudice:

12cv01925

Claim One as to the federal Fair Debt Collections Practices Act.

Claim Two under the federal Fair Credit Reporting Act.

Claim Four for breach of Fiduciary Duty.

Claim Seven under the federal civil RICO statute.

Claim Nine for Declaratory Relief as an independent claim.

The Court grants judgment on the pleadings for the Truman/TruCap and Marix Defendants as to:

Claim One as to the state Rosenthal Act claim.

Claim Two under the federal Fair Credit Reporting Act.

Claim Four for breach of Fiduciary Duty.

Claim Seven under the federal civil RICO statute.

Claim Nine for Declaratory Relief as an independent claim.

Claims remaining for trial are Claim One for violations of the federal Fair Debt Collection Practices Act against Defendants Truman/TruCap and Marix; Claim Three for Fraudulent Misrepresentation against all Defendants; Claim Five for Unjust Enrichment against all Defendants; Claim Six for Civil Conspiracy against All Defendants; and Claim Eight for violations of California's Unfair Competition Law predicated upon Claims One, Three, Five, and Six, against all Defendants.

The Parties are reminded that, per the Scheduling Order dated November 1, 2012, the deadline for filing dispositive motions is July 29, 2013.

**IT IS SO ORDERED**.

DATED:  March 25, 2013

Hon. Roger T. Benitez
United States District Judge

- 19 -

12cv01925