1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| GORDON E. DUNFEE, et al., | Civil No.    12-cv-1925-BEN (DHB) |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION TO QUASH SUBPOENA** |
| v. | **[ECF No. 40]** |
| TRUMAN CAPITAL ADVISORS, LP, et al., | |
| Defendants. | |

16        On September 27, 2013, Plaintiffs filed a document entitled "Plaintiffs' Notice of

17  Motions and Motions to Quash the Subpoena for the Hurwitz Deposition and to Extend the

18  Discovery Cut Off Dates."  (ECF No. 40.)  On October 14, 2013, Defendants Wells Fargo

19  Bank, N.A. and Wells Fargo Home Mortgage (collectively "Wells Fargo") filed an

20  opposition to Plaintiffs' motion to quash.  (ECF No. 46.)  That same day, Defendants

21  Truman Capital Advisors, LP, TruCap Grantor Trust 2010-2 and Marix Servicing, LLC

22  (collectively "Truman") filed a joinder to the opposition.  (ECF No. 47.)  On October 22,

23  2013, Plaintiffs filed a reply to the opposition and joinder.  (ECF No. 48.)

24        Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the matter suitable for

25  determination based on the papers submitted and without oral argument.  For the reasons set

26  forth below, the Court **DENIES** Plaintiffs' motion to quash.[1]

27

28
_____

[1] The Court previously denied Plaintiffs' request for an extension of the deadline to
complete discovery.  (ECF No. 45.)

12cv1925-BEN (DHB)

# I. BACKGROUND

The instant dispute arose following Wells Fargo's September 6, 2013 issuance of a subpoena to Plaintiffs' tax attorney, Stuart M. Hurwitz, APC. (ECF No. 40 at 14.) The subpoena commanded Mr. Hurwitz to appear for deposition testimony on September 30, 2013, and to produce for inspection the following documents:

> For Gordon and Maureen Dunfee and Gordon and Maureen L. Dunfee 2003 Trust, dated 11/05/04, all information for the years 2007, 2008, 2009, 2010 and 2011, including, but not limited to:
>
> All federal and state income tax returns;
>
> All documents and work papers that, in any way, were used or created in preparing the income tax returns;
>
> All correspondence to or from Mr. and Mrs. Dunfee; [and]
>
> All documents received from Mr. and Mrs. Dunfee that were used to prepare the income tax returns[.]

(*Id.*)

Plaintiff Gordon Dunfee met and conferred with Wells Fargo's counsel on September 27, 2013. Plaintiffs offered to produce redacted copies of their 2008 and 2009 tax returns, which would be certified as correct by Mr. Hurwitz, if Wells Fargo agreed to withdraw the subpoena. (*Id.* at 5:9-11, 10:11-15.) Wells Fargo rejected this proposal. (*Id.* at 5:11-12, 10:15.) Wells Fargo's counsel agreed to continue Mr. Hurwitz's deposition until after the Court rules on Plaintiffs' motion to quash. (ECF No. 46 at 2:13-14; ECF No. 46-1 at 4:12-13.)

Plaintiffs now seek to quash the subpoena for a number of reasons, including that the subpoena: (1) seeks disclosure of privileged information; (2) is intended "to harass, embarrass and abuse" Plaintiffs; (3) seeks information protected by the attorney-client privilege; (4) imposes an undue burden on Plaintiffs; (5) is duplicative[2] in that it seeks copies of their 2008 and 2009 tax returns that were already provided to Wells Fargo during loan modification discussions; and (6) with respect to the 2007, 2010 and 2011 tax returns, seeks

---

[2] Plaintiffs' motion actually contends the subpoena is duplicitous. However, in context, it appears Plaintiffs intend to argue the subpoena is duplicative.

12cv1925-BEN (DHB)

information that is not relevant to the subject matter of this litigation.  (ECF No. 40 at 2:7-10, 6:1-8:12, 10:11-14.)

In the opposition, Wells Fargo contends the subpoenaed documents are relevant because, among other things: (1) Plaintiffs' tax returns provide a second source of evidence concerning the accuracy and completeness of the financial representations provided during loan modification discussions; and (2) the subpoenaed documents are relevant to Plaintiffs' credibility, especially in light of Plaintiff Gordon Dunfee's deposition testimony that his 2009 tax return contained a $250,000 error.  (ECF No. 46 at 3:21-5:25.)  Wells Fargo also argues there is no federal tax return privilege and that, if any valid privilege does exist, "it can be asserted at the deposition where appropriate."  (*Id.* at 3:19, 6:5-6.)

In the joinder, Truman contends that "Plaintiffs have put their financial capacity at issue in this case, unclean hands is a defense[3] and Plaintiffs have waived any issues they have in producing relevant tax returns by voluntarily producing the tax returns."  (ECF No. 47 at 1:28-2:2.)  Truman further contends the deposition of Mr. Hurwitz should proceed in light of the issue surrounding the 2009 tax return error.  (*Id.* at 2:3-9.)

## II. ANALYSIS

"On timely motion, the issuing court must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  FED. R. CIV. P. 45(c)(3)(A)(iii)-(iv).

### A.   **Relevance**

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  The relevance standard is thus commonly recognized

---

[3] The Court notes that both Wells Fargo and Truman have asserted an affirmative defense of unclean hands.  (*See* ECF No. 1-4 at 29:10-11; ECF No. 31 at 12:22-24.)

1   as one that is necessarily broad in scope in order "to encompass any matter that bears on, or

2   that reasonably could lead to other matter that could bear on, any issue that is or may be in

3   the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman*

4   *v. Taylor*, 329 U.S. 495, 501 (1947)).

5          However broadly defined, relevancy is not without "ultimate and necessary

6   boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion

7   to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751

8   (9th Cir. 2002). Moreover, district courts have broad discretion to limit discovery. For

9   example, a court may limit the scope of any discovery method if it determines that "the

10  burden or expense of the proposed discovery outweighs its likely benefit, considering the

11  needs of the case, the amount in controversy, the parties' resources, the importance of the

12  issues at stake in the action, and the importance of the discovery in resolving the issues."

13  FED. R. CIV. P. 26(b)(2)(C)(iii).

14         Plaintiffs contend Wells Fargo's subpoena seeks irrelevant information with respect

15  to their 2007, 2010 and 2011 tax returns. However, the Court finds that Plaintiffs' tax

16  returns and related documents from 2007 through 2011 are, at a minimum, reasonably

17  calculated to lead to the discovery of admissible evidence. Indeed, Defendants seek to

18  establish an unclean hands defense which reasonably involves an assessment of Plaintiffs'

19  complete financial condition, including eligibility for loan modification, homeowner status

20  and the accuracy of financial information disclosed during the loan modification discussions.

21  Moreover, Plaintiffs' tax returns are relevant to their credibility which they have placed at

22  issue by bringing this lawsuit.

23         That being said, on its face the subpoena seeks documents that are not relevant.

24  Indeed, the subpoena seeks all information related to Plaintiffs from 2007 to 2011. Such a

25  request is extremely overbroad and plainly might include information that is not relevant to

26  this lawsuit. Similarly, the subpoena's request for all communications between Plaintiffs and

27  Mr. Hurwitz potentially touches on matters not relevant to this lawsuit, and the subpoena

28  should accordingly be limited to communications pertaining to Plaintiffs' finances. Other

than these improper aspects of the subpoena, however, the remainder of the items specifically identified are relevant.

Accordingly, subject to the modifications set forth above, the Court finds the subpoena seeks relevant information.

**B.**   **Privilege**

Wells Fargo is entitled to discover relevant information, unless a privilege applies. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."). As discussed above, Plaintiffs contend numerous privileges apply to the subpoenaed documents: (1) a privilege against disclosure of tax returns; (2) the attorney-client privilege; and (3) the attorney work product doctrine.

**1.**   **Tax Returns**

Plaintiffs correctly argue that California law recognizes a privilege that protects tax returns from disclosure, although the privilege is not absolute. *See Young v. United States*, 149 F.R.D. 199, 201 (S.D. Cal. 1993) (citations omitted). However, although Plaintiffs' Second Amended Complaint contains state law claims, it also contains federal claims. "Where there are federal question claims and pendant state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (citing FED. R. EVID. 501 advisory committee note; *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir. 1982)).

"Under federal law, tax returns are generally discoverable where necessary in private civil litigation." *Young*, 149 F.R.D. at 201 (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961)). "Tax returns do not enjoy an absolute privilege from discovery." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (citing *St. Regis Paper*, 368 U.S. at 219; *Trans World Airlines, Inc. v. Hughes*, 29 F.R.D. 523 (S.D.N.Y. 1961)). "Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Id.* at 229 (citations omitted).

To ensure a proper balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns, courts generally inquire, first, whether "the returns are relevant to the subject matter of the action," and, second, whether "there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *A. Farber & Partners., Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997)). "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable." *Kelley v. Billings Clinic*, No. CV 12-74-BLG-RFC-CSO, 2013 U.S. Dist. LEXIS 50370, at *16 (D. Mont. Apr. 8, 2013) (citing *Farber & Partners*, 234 F.R.D. at 191).

As discussed above, Wells Fargo has met its burden of demonstrating the relevancy of Plaintiffs' tax returns from 2007 through 2011. Thus, the burden shifts to Plaintiffs "to show other sources exist from which the information is readily obtainable." *Id.* (citing *Farber & Partners*, 234 F.R.D. at 191). The Court concludes that Plaintiffs have not met this burden. Indeed, Plaintiffs have offered no alternative source of their financial condition during the relevant years.

Accordingly, the Court overrules Plaintiffs' objection that their tax returns are privileged and not discoverable. In light of this conclusion, the Court need not address Wells Fargo's contention that Plaintiffs waived any privilege that might apply to their tax returns based on their partial production of some years' tax returns.

## 2. Attorney-Client Privilege

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989); *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977); FED. R. EVID. 501).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*,

632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Id.* (citing *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)).  "The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" *Id.* (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)).  "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke*, 974 F.2d at 129 (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976); *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988)).

Numerous courts have addressed the application of the attorney-client privilege in cases where, as here, the attorney was acting as a tax preparer.  *See, e.g.*, *Long-Term Capital Holdings v. United States*, No. 3:01 CV 1290, 2003 U.S. Dist. LEXIS 7826, at *12 (D. Conn. Feb. 14, 2003) (recognizing "[t]he inherent tension in determining whether communications to tax attorneys regarding tax matters are privileged").  The Seventh Circuit thoroughly analyzed the issue in *United States v. Frederick*, 182 F.3d 496, 499 (7th Cir. 1999), a case in which the Internal Revenue Service sought documents[4] from Richard Frederick, who is both a lawyer and an accountant, in connection with an investigation into several of Frederick's clients for whom he had provided both legal representation and tax preparation services.  The Seventh Circuit further explained that "[t]here is no common law accountant's or tax preparer's privilege." *Id.* at 500 (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-19 (1984); *Couch v. United States*, 409 U.S. 322, 335 (1973)).  Moreover, "a

---

[4] In *Frederick* the IRS sought "drafts of the returns (including scheduled), worksheets containing the financial data and computations required to fill in the returns, and correspondence relating to the returns.  These are the kinds of documents that accountants and other preparers generate as an incident to preparing their clients' returns." 182 F.3d at 500.

taxpayer must not be allowed, by hiring a lawyer to do the work that an accountant, or other tax preparer, or the taxpayer himself or herself, normally would do, to obtain greater protection . . . than a taxpayer who did not use a lawyer as his tax preparer would be entitled to." *Id.* (citations omitted).

> To rule otherwise would be to impede tax investigations, reward lawyers for doing nonlawyers' work, and create a privileged position for lawyers in competition with other tax preparers--and to do all this without promoting the legitimate aims of the attorney-client and work-product privileges. The attorney-client privilege is intended to encourage people who find themselves involved in actual or potential legal disputes to be candid with any lawyer they retain to advise them.
>
> . . . .
>
> Communications from a client that neither reflect the lawyer's thinking nor are made for the purpose of eliciting the lawyer's professional advice or other legal assistance are not privileged. The information that a person furnishes the preparer of his tax return is furnished for the purpose of enabling the preparation of the return, not the preparation of a brief or an opinion letter. Such information therefore is not privileged.

*Id.* at 500 (citing *Upjohn*, 449 U.S. at 389).

Here, although Plaintiffs contend Wells Fargo's subpoena seeks production of communications protected by the attorney-client privilege, Plaintiffs have not met their "burden of establishing the relationship and privileged nature of the communication[s]." *Richey*, 632 F.3d at 566 (citing *Bauer*, 132 F.3d at 507). Indeed, Plaintiffs have not explained whether any of the documents sought contain legal advice as opposed to accounting advice. *See id.* ("If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist."). Having said that, the Court concludes that an attorney-client privilege *may* exist, depending on the types of documents in Mr. Hurwitz's possession that are responsive to the subpoena. Without having seen those documents, however, the Court cannot quash the subpoena on grounds that it violates the attorney-client privilege. Rather, the privilege, if it applies, shall be raised at Mr. Hurwitz's deposition on a document-by-document basis. Similarly, to the extent the deposition questions seek to inquire into areas covered by the privilege, Plaintiffs are not precluded from asserting the privilege during the deposition. The parties are expected to

cooperate in good faith during the deposition with respect to any assertion of the attorney-client privilege.

Accordingly, the Court overrules Plaintiffs' objection that the subpoena seeks production of attorney-client privileged communications without prejudice to Plaintiffs reasserting the privilege during Mr. Hurwitz's deposition.

### 3.    Work Product

"The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing FED. R. CIV. P. 26(b)(3)).  "The rule protects work product which reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D. Cal. 1992) (citing FED. R. CIV. P. 26(b)(3)); *see also Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 930 (N.D. Cal. 1976) ("The work product doctrine . . . is aimed at protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery.") (citations omitted).

"To establish applicability of the work-product doctrine, the proponent must show that the materials were prepared in anticipation of litigation or in preparation for trial."  *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988) (citing FED. R. CIV. P. 26(b)(3)).  "There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation." *Id.* (citations omitted). "Documents prepared in the regular course of business do not fall under 'work product' and thus are not immune from discovery." *Miller*, 141 F.R.D. at 303 (citing *United States v. Exxon Corp.*, 87 F.R.D. 624, 638-39 (D.D.C. 1980)).

"[A]n accountant's worksheets are not privileged, and a lawyer's privilege . . . is no greater when he is doing accountant's work." *Frederick*, 187 F.3d at 501 (citing *Arthur Young*, 465 U.S. at 817-19).  Further, "a party's analysis of contingent tax liabilities, while

1  involving the 'weighing of legal arguments, predicting the stance of the IRS, and forecasting

2  [the party's] position in court,' [is] not prepared in anticipation of a dispute with the IRS over

3  its tax return . . . [and because] the analysis was performed for financial reporting purposes,

4  to anticipate the financial impact of potential litigation," it does not constitute work product.

5  *United States v. Bell*, No. C 94-20342 RMW, 1994 U.S. Dist. LEXIS 17408, at *11-12 (N.D.

6  Cal. Nov. 9, 1994) (quoting *United States v. El Paso*, 682 F.2d 530, 542-43 (5th Cir. 1982)).

7       "[A] dual-purpose document--a document prepared for use in preparing tax returns and

8  for use in litigation--is not privileged; otherwise, people in or contemplating litigation would

9  be able to invoke, in effect, an accountant's privilege, provided that they used their lawyer

10  to fill out their tax returns." *Id.*; *see also In re Grand Jury Subpoena*, 357 F.3d 900, 909 (9th

11  Cir. 2003) (recognizing that the documents at issue in *Frederick* were not entitled to work

12  product protection "because tax return preparation is a readily separate purpose from

13  litigation preparation.").  However, the Ninth Circuit has determined that a dual-purpose

14  document is "entitled to work protection [where], taking into account the facts surrounding

15  their creation, their litigation purpose so permeates any non-litigation purpose that the two

16  purposes cannot be discretely separated from the factual nexus as a whole." *In re Grand*

17  *Jury Subpoena*, 357 F.3d at 909; *cf. Dewitt v. Walgreen Co.*, No. 1:11-cv-00263-BLW, 2012

18  U.S. Dist. LEXIS 125493, at *13 (D. Idaho Sept. 4, 2012) (rejecting work product assertion

19  where "the prospect of litigation was too remote for work product immunity" and it was not

20  shown that the documents were created "because of the prospect of litigation.").

21       Here, to the extent Plaintiffs contend the documents at issue are protected work

22  product, that argument fails because Plaintiffs have not demonstrated that any of the

23  documents sought by Wells Fargo's subpoena were prepared in anticipation of litigation.

24  Rather, the documents appear to have been prepared in the regular course of business,

25  namely, Mr. Hurwitz's preparation of Plaintiffs' tax returns.  As recognized by the Fifth

26  Circuit in *El Paso*, analysis of tax liabilities, while perhaps involving the weighing of legal

27  arguments, does not constitute attorney work product.  682 F.2d at 542-43.

28  / / /

1  Accordingly, the Court overrules Plaintiffs' objection that the subpoena seeks

2  documents protected by the work product doctrine.  As with Plaintiffs' attorney-client

3  privilege objection, the Court's decision with respect to the work product doctrine is done

4  without prejudice to Plaintiffs being able to re-assert the privilege if Mr. Hurwitz brings to

5  the deposition documents that were solely prepared in anticipation of litigation (in which

6  case the documents would most likely not even be relevant) or "dual purpose" documents

7  whose litigation purposes justify application of the work product doctrine taking into account

8  the totality of the circumstances.

9  **4.    Additional Objections**

10  Plaintiffs also maintain the subpoena is intended to harass, embarrass and abuse

11  Plaintiffs, that it imposes an undue burden on Plaintiffs, and it is duplicative.  However, these

12  arguments are not persuasive.  First, as the Court discussed above, the subpoena seeks

13  information that is relevant to this litigation.  Accordingly, in the absence of any evidence

14  to support Plaintiffs' claim that Wells Fargo issued the subpoena for improper purposes, the

15  Court rejects Plaintiffs' argument that the subpoena is intended to harass, embarrass and

16  abuse Plaintiffs.  Second, there is no burden on Plaintiffs.  Rather, any burden imposed by

17  the subpoena is directed to Mr. Hurwitz.  However, even that burden is not undue given the

18  nature of information Wells Fargo seeks.  Finally, although the subpoena seeks some

19  documents that were provided to Defendants during the loan modification discussions, that

20  fact alone does not justify quashing the subpoena.

21  **III.  CONCLUSION**

22  For the reasons set forth above, and subject to the modifications to the subpoena

23  regarding relevance as discussed above, the Court **DENIES** Plaintiffs' motion to quash

24  Wells Fargo's subpoena to Plaintiffs' tax attorney, Stuart M. Hurwitz.

25  / / /

26  / / /

27  / / /

28  / / /

1    Accordingly, IT IS HEREBY ORDERED that the discovery cutoff shall be reopened

2    until **December 20, 2013** for the sole purpose of permitting the deposition of Mr. Hurwitz

3    to proceed.

4    **IT IS SO ORDERED.**

5    DATED:   November 20, 2013

6

7                                                              DAVID H. BARTICK
                                                               United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv1925-BEN (DHB)